IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHOENIX PAYMENT SYSTEMS, INC. d/b/a   )
ELECTRONIC PAYMENT EXCHANGE,   )
   )
       Plaintiff,   )
   )
     v.   )   C.A. No. 07-537 (***)
   )
LEXCEL, INC. and LEXCEL SOLUTIONS,   )
INC.,   )
   )
       Defendants.   )

**PLAINTIFF PHOENIX PAYMENT SYSTEMS' REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS DEFENDANT LEXCEL'S COUNTERCLAIM**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jheaney@mnat.com
   *Attorneys for Plaintiff Phoenix Payment*
   *Systems, Inc. d/b/a Electronic Payment*
   *Exchange*

OF COUNSEL:

David J. Wolfsohn
Steven B. Samuels
Jordan L. Jonas
WOODCOCK WASHBURN LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 568-3100

January 2, 2008

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. ii

SUMMARY OF THE ARGUMENT .................................................................... 1

ARGUMENT ...................................................................................................... 1

    I.      LEXCEL'S ADMITTED FAILURE TO PLEAD SUFFICIENT FACTS
            IN ANY OF ITS PURPORTED CLAIMS IS FATAL UNDER
            *TWOMBLY* ................................................................................... 1

    II.     LEXCEL'S CONCESSION THAT ITS CODE MAY NOT BE
            COPYRIGHTABLE CANNOT SAVE ITS STATE-LAW CLAIMS
            FROM PREEMPTION UNDER THE COPYRIGHT ACT ................................. 4

CONCLUSION ................................................................................................... 8

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adams v. Warner Bros. Pictures Network,*
    No. 05 CV 5211, 2007 U.S. Dist. LEXIS 47448 (E.D.N.Y. June 29, 2007) .......................... 3

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,*
    805 F.2d 663 (7th Cir. 1986) ......................................................................................... 4-5

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) .................................................................................................. 1-4

*Berge v. The Board of Trustees of the Univ. of Ala.,*
    104 F.3d 1453 (4th Cir. 1997) .......................................................................................... 5

*Conley v. Gibson,*
    355 U.S. 41 (1957) ........................................................................................................ 1-2

*DSMC, Inc. v. Convera Corp.,*
    273 F. Supp. 2d 14 (D.D.C. 2002) .................................................................................... 2

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,*
    307 F.3d 197 (3d Cir. 2002) .............................................................................................. 7

*Dunlap v. G&L Holding Group Inc.,*
    381 F.3d 1285 (11th Cir. 2004) ........................................................................................ 6

*Evans v. McMillian,*
    No. 07-591-JJF, 2007 U.S. Dist. LEXIS 90563 (D. Del. Dec. 5, 2007) ............................. 2

*Information Handling Servs. Inc. v. LRP Publ'ns Inc.,*
    No. 00-1859, 2000 U.S. Dist. LEXIS 5187 (E.D. Pa. Apr. 18, 2000) ................................. 6

*Interscope Records v. Rodriguez,*
    No. 06cv2485, 2007 U.S. Dist. LEXIS 60903 (S.D. Cal. Aug. 17, 2007) ........................... 3

*Key Consolidated 2000, Inc. v. Troost,*
    432 F. Supp. 2d 484 (M.D. Pa. 2006) ............................................................................ 2-4

*Land v. The City of Dover,*
    No. 07-160-LPS, 2007 U.S. Dist. LEXIS 86507 (D. Del. Nov. 26, 2007) ........................... 2

*Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.,*
    264 F.3d 622 (6th Cir. 2001) ............................................................................................. 5

*Nat'l Basketball Assoc. v. Motorola, Inc.,*
    105 F.3d 841 (2d Cir. 1997) .............................................................................................. 5

*Parker v. State of Delaware Department of Public Safety,*
   11 F. Supp. 2d 467 (D. Del. 1998) ............................................................................ 7

*Pfizer Inc. v. Ranbaxy Labs. Ltd.,*
   No. 07-138-JJF, 2007 U.S. Dist. LEXIS 88030 (D. Del. Nov. 29, 2007) ............................ 1

*ProCD, Inc. v. Zeidenberg,*
   86 F.3d 1447 (7th Cir. 1996) ................................................................................... 6

*Swierkiewicz v. Sorema N.A.,*
   534 U.S. 506 (2002) ............................................................................................... 2

*Toney v. L'Oreal USA, Inc.,*
   406 F.3d 905 (7th Cir. 2005) ................................................................................... 5

*Victaulic Co. v. Tieman,*
   499 F.3d 227 (3d Cir. 2007) ................................................................................... 2

*Wrench LLC v. Taco Bell Corp.,*
   256 F.3d 446 (6th Cir. 2001) ................................................................................... 5

## STATUTES AND OTHER AUTHORITIES

17 U.S.C. § 102(b) .................................................................................................... 6

F.R.C.P. 12(b)(6) ................................................................................................. 1, 8

Rule 11 ................................................................................................................ 8

<u>SUMMARY OF THE ARGUMENT</u>

Like a child that covers its eyes in the hopes that not seeing something frightening will make it go away, Lexcel, Inc. ("Lexcel") covers its eyes to the teachings of *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), even going so far as to assert that it "made no change to the pleading standard." (D.I. 22 at 3). Lexcel simply cannot come to terms with the fact that *Twombly* jettisoned the *Conley v. Gibson* "no set of facts" standard, now requiring more than "mere labels and conclusions"—that is, requiring factual allegations backing up any "labels or conclusions." Hoping that the Court will indulge Lexcel's wishful thinking and ignore Supreme Court precedent, Lexcel cites almost exclusively pre-*Twombly* case law applying the now-discredited *Conley* standard. Since Lexcel's counterclaim utterly fails to allege any facts pertaining to Phoenix Payment Systems, Inc. d/b/a/ Electronic Payment Exchange ("EPX"), Lexcel does not come close to meeting *Twombly*'s standard, and on this ground alone, its counterclaim should be dismissed. In addition, Lexcel completely ignores numerous appellate authorities holding that a party cannot assert that a work is covered by the Copyright Act and then assert state law claims such as conversion regarding that same work on the theory that if any of the work is found uncopyrightable, state tort law may have been violated. Since Lexcel argues that all of its code is covered by the Copyright Act, its case must rise or fall under that Act's provisions; any state-law claim purportedly covering Lexcel's code is preempted.

<u>ARGUMENT</u>

I.    <u>LEXCEL'S ADMITTED FAILURE TO PLEAD SUFFICIENT FACTS IN ANY OF ITS PURPORTED CLAIMS IS FATAL UNDER *TWOMBLY*</u>

Lexcel completely ignores the fact that, in *Twombly*, the Supreme Court retired the *Conley v. Gibson*, 355 U.S. 41 (1957) standard for dismissal under Rule 12(b)(6). *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, No. 07-138-JJF, 2007 U.S. Dist. LEXIS 88030, at *6 (D. Del. Nov. 29,

2007).  Now, "[t]o survive a motion to dismiss, a civil plaintiff must allege *facts* that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)); *see also Land v. The City of Dover*, No. 07-160-LPS, 2007 U.S. Dist. LEXIS 86507, at *5 (D. Del. Nov. 26, 2007) (same).  More than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required.  *Evans v. McMillian*, No. 07-591-JJF, 2007 U.S. Dist. LEXIS 90563, at *4 (D. Del. Dec. 5, 2007) (quoting *Twombly*, 127 S. Ct. at 1965).  *Twombly*, therefore, requires that facts be pled to support the cause of action, not mere "labels and conclusions."

Lexcel acts as if *Twombly* was never decided, citing almost exclusively pre-*Twombly* cases, many of which apply the very *Conley v. Gibson* "no set of facts" standard that *Twombly* jettisoned.  (See D.I. 22 at 4 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002), which cites the retired "any set of facts" test at 514); D.I. 22 at 6 (citing *Key Consolidated 2000, Inc. v. Troost*, 432 F. Supp. 2d 484, 488 (M.D. Pa. 2006), which cites the retired "any set of facts" standard at 486); D.I. 22 at 7 (citing *DSMC, Inc. v. Convera Corp.* 273 F. Supp. 2d 14, 24 (D.D.C. 2002), which quotes *Conley*'s retired "no set of facts" standard at 23).  Thus Lexcel appears to concede that it cannot meet *Twombly*'s requirement that it plead facts supporting its legal conclusions.

Lexcel wastes considerable space making a red-herring argument that EPX urged the Court to adopt a "heightened pleading" standard.  (D.I. 22 at 3).  But EPX never made such an argument; rather, EPX's motion is premised on the notion that the Supreme Court's teachings in *Twombly* that "mere labels and conclusions" are insufficient cannot be ignored, as Lexcel

would have it.  *See Interscope Records v. Rodriguez*, No. 06cv2485, 2007 U.S. Dist. LEXIS 60903, at *3-4, Copy. L. Rep. (CCH) P29,465 (S.D. Cal. Aug. 17, 2007) (denying plaintiffs' motion for entry of default judgment because the complaint failed to sufficiently state a claim upon which relief can be granted when the "complaint is simply a boilerplate listing of the elements of copyright infringement without any facts pertaining specifically to the instant Defendant.").[1]

Moreover, aside from being devoid of factual allegations, even Lexcel's "labels and conclusions" are incomplete:  In particular, Lexcel fails to allege the necessary elements for copyright infringement.  Lexcel's opposition brief concedes this point by asserting that "PPS gained access to Lexcel's software," (D.I. 22 at 2), but by failing to point to anywhere in the Counterclaim where that is alleged, much less to a factual allegation supporting that element.  (Compare D.I. 22 at 2 to D.I. 9).  Indeed, the Counterclaim contains no allegations regarding what EPX is allegedly using that allegedly infringes Lexcel's purported copyrights or how EPX had access to Lexcel's "Computer Programs."  This omission is fatal.  *See Adams v. Warner Bros. Pictures Network*, No. 05 CV 5211, 2007 U.S. Dist. LEXIS 47448, at *10, Copy. L. Rep. (CCH) P29,408 (E.D.N.Y. June 29, 2007) (where plaintiff's complaint contained no allegations that defendants had access to plaintiff's copyrighted design and defendants argued it had no opportunity to see plaintiff's design, court held that "on this ground alone, [plaintiff's copyright] action should be dismissed").  Further, Lexcel's reliance upon *Key Consolidated* in support of its copyright claim (D.I. 22 at 6) only highlights the counterclaim's infirmity, since in *Key*

---

[1]    Lexcel cites to Form 19 in the Appendix of Forms to the Federal Rules in an attempt to excuse the absence of any facts in its counterclaim.  (D.I. 22 at 4).  Even this form, however, which obviously preceded *Twombly*, contains many more factual allegations than Lexcel's counterclaim, including the attachment of the allegedly infringing work (¶ 6), and allegations expressly identifying the allegedly infringing work and what defendant was doing that the plaintiff contended constituted infringement (¶ 6).

*Consolidated*, the plaintiff most certainly did allege that the defendant had access to plaintiff's work.  *Key Consolidated 2000, Inc. v. Troost*, 432 F. Supp. 2d 484, 488 (M.D. Pa. 2006) (denying motion to dismiss when each element for copyright infringement had been alleged, including "that Defendant had access to Plaintiff's text").  Similarly, Lexcel never alleges what it is that EPX is supposedly doing that constitutes a "misappropriation" or a "conversion." *Twombly* therefore clearly mandates that the entire Counterclaim be dismissed.

II.     LEXCEL'S CONCESSION THAT ITS CODE MAY NOT BE COPYRIGHTABLE CANNOT SAVE ITS STATE-LAW CLAIMS FROM PREEMPTION UNDER THE COPYRIGHT ACT

Lexcel concedes, as it must, that it claims copyright protection for all of its five computer program registrations, and claims state law protection for that very same material it told the Copyright Office was subject to the Act's protection.   The gravamen of Lexcel's conversion and trade secret misappropriation claims, therefore, is indisputably the same as Lexcel's purported copyright claim.  Faced with these uncontroverted precepts, Lexcel attempts to back away from its allegation of copyright infringement, suggesting that perhaps some or even all of what it told the Copyright Office was protected under the Act may not be protectible.  (D.I. 22 at 11-12).  Lexcel then asserts that "[a]ny 'misappropriation' or 'conversion' of Lexcel's property that is not protected by the Copyright Act is still actionable."  (D.I. 22 at 12).  This position, however, has been soundly rejected by no fewer than four appellate courts, which is why Lexcel fails to cite a single case in favor of its lonely position.

It has long been established that "Congress contemplated that 'as long as a work fits within one of the general subject matter categories of section 102 and 103,…[section 301(a)] prevents the States from protecting it even if it fails to achieve Federal copyright because it is too minimal or lacking in originality to qualify.'" *Baltimore Orioles, Inc. v. Major League Baseball*

*Players Ass'n*, 805 F.2d 663, 676 (7th Cir. 1986) (quoting H.R. Rep. No. 1476, 94th Cong., 2d. Sess. 52, 131, *reprinted in* 1976 U.S. Code Cong. & Ad. News 5659, 5747).  The Second, Fourth, Sixth and Seventh Circuits have held that even if there are unprotectable portions in a copyrighted work, the work still comes within subject matter of the Copyright Act, satisfying the preemption test:

> Berge's argument that her conversion claim is not preempted because it is her "ideas and methods," which are specifically excluded from copyright protection, [17 U.S.C.] § 102(b), that have been converted rests on a fallacious interpretation of the Copyright Act. In other words, Berge wants to argue that ideas embodied in a work covered by the Copyright Act do not fall within the scope of the Act because the Act specifically excludes them from protection. But scope and protection are not synonyms. Moreover, the shadow actually cast by the Act's preemption is notably broader than the wing of its protection.

*Berge v. The Board of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997); *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 911 (7th Cir. 2005) ("*Baltimore Orioles* [*v. Major League Baseball Players Ass'n*, 805 F.2d 663 (7th Cir. 1986)] holds that state laws that intrude on the domain of copyright are preempted even if the particular expression is neither copyrighted nor copyrightable."); *Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 636 (6th Cir. 2001) (holding that even though a particular line and artwork were not amenable to copyright protection, the preemption subject matter requirement was satisfied); *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir. 2001) ("The Second, Fourth, and Seventh Circuits have held that the scope of the Copyright Act's subject matter extends beyond the tangible expressions that can be protected under the Act to elements of expression which themselves cannot be protected…. We join our sister circuits in holding that the scope of the Copyright Act's subject matter is broader than the scope of the Act's protections."); *Nat'l Basketball Assoc. v. Motorola, Inc.*, 105 F.3d 841, 849 (2d Cir. 1997) ("Copyrightable material often contains uncopyrightable

elements within it, but Section 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements."); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996) (finding that data not sufficiently original to be copyrighted but underlying a registered computer program was within the subject matter of copyright); *see also Information Handling Servs. Inc. v. LRP Publ'ns Inc.*, No. 00-1859, 2000 U.S. Dist. LEXIS 5187, at *1-8, 54 U.S.P.Q.2d (BNA) 1571 (E.D. Pa. Apr. 18, 2000) (in denying motion to remand, holding plaintiffs' misappropriation and unfair competition claims were preempted even though portions of plaintiffs' database were not copyrightable and "[i]t is clear that plaintiffs have attempted to avoid stating a claim under the Copyright Act for the simple reason that they cannot claim copyright protection for items such as EEOC opinions.").[2]

Lexcel represented to the Copyright Office that the computer programs for which it applied for registrations were copyrightable. (D.I. ¶¶ 6-12). Indeed, Lexcel claims copyright in all those programs, with no exceptions. Lexcel is therefore claiming that its purported software falls within the scope of the Copyright Act.[3] For Lexcel's conversion and trade secret misappropriation counterclaims to survive preemption, Lexcel must satisfy the "extra element" test, which it has not done. (*See* D.I. 13 at 8-14). A state cause of action is *not* preempted if (1)

---

[2]    In *Dunlap v. G&L Holding Group Inc.*, 381 F.3d 1285, 1297 (11th Cir. 2004), the Eleventh Circuit held that a claim for "conversion of ideas" was not preempted. The court in *Dunlap*, however, also noted that "[w]here a work of original authorship embraces more than simply the idea, preemption would be appropriate. But where, as here, there is no work that is claimed to have been pirated--only an idea which lends itself to very few expressions--there is merger and no preemption." *Id.* at 1295. Lexcel alleges that it holds valid copyrights in its software. (D.I. 9 ¶¶ 7-12). Therefore, Lexcel by necessity alleges, and is estopped to deny, that its software is more than an idea, since ideas are ineligible for copyright protection. 17 U.S.C. § 102(b). Because Lexcel takes the position that its purported "work of original authorship embraces more than simply the idea," Lexcel's claims would be preempted even under *Dunlap*. Moreover, Lexcel alleges that its **software** was misappropriated and converted, not any ideas. (D.I. 9 ¶¶ 30-34, 36-38).

[3]    Lexcel does not argue that computer software or source code is not covered by the Copyright Act.

the subject matter does not come within the subject matter of copyright, and (2) the cause of action "requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display" making "the state cause of action … qualitatively different from, and not subsumed within, a copyright infringement claim." *See Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 216-18 (3d Cir. 2002). In footnote 3, Lexcel concedes that it has failed to allege any "extra element" with respect to its state law claims, but seems to suggest that the Court can look to EPX's allegations in its complaint to help Lexcel survive this motion to dismiss. (D.I. 22 at 11 n.3). Lexcel cites *Parker v. State of Delaware Department of Public Safety*, 11 F. Supp. 2d 467, 471 (D. Del. 1998) in support of this argument. (*Id.*). While *Parker* held that the court may evaluate the pleadings, including the attachments, when evaluating a motion to dismiss, in *Parker*, the court looked to the attachments of ***plaintiff's*** complaint when deciding a motion to dismiss ***plaintiff's*** complaint. *Parker*, 11 F. Supp. 2d at 470-71. Here, Lexcel argues that the court should somehow incorporate by reference ***EPX's*** complaint for additional facts to support ***Lexcel's*** Counterclaim. This is a bizarre argument; indeed, if Lexcel really wants to incorporate by reference EPX's complaint, then the Court should enter judgment on the pleadings in favor of EPX since Lexcel would be conceding that EPX is not infringing Lexcel's purported copyrights and has engaged in unfair competition in violation of the Lanham Act. Short of that, it would be unprecedented for the Court to consider selective aspects pled by one party as if they had been pled by another party. The simple truth of the matter is that Lexcel has not alleged the "extra element" required to avoid section 301 preemption, and Lexcel cannot rely upon allegations it itself has not asserted.[4] The

---

[4]   Obviously, EPX did not attach to the complaint the letters from Lexcel's counsel to assert that the assertions made therein were true, but rather to show that EPX had been wrongfully accused of infringement, an issue relevant to this Court's subject-matter jurisdiction.

fact that Lexcel could not bring itself to allege in its Counterclaim the false allegations asserted in its counsel's letters shows how spurious those accusations were, supporting EPX's unfair competition claims.  But since Lexcel, perhaps mindful of Rule 11, chose not to assert those same false allegations in its Counterclaim, it cannot now rely upon them to support its opposition to this motion.[5]

CONCLUSION

For the reasons stated above and in EPX's opening brief, (D.I. 13), all counts of Lexcel's Counterclaim sound be dismissed pursuant to F.R.C.P. 12(b)(6).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney (#3052)*

_____

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Plaintiff Phoenix Payment*
  *Systems, Inc. d/b/a Electronic Payment*
  *Exchange*

OF COUNSEL:

David J. Wolfsohn
Steven B. Samuels
Jordan L. Jonas
WOODCOCK WASHBURN LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 568-3100

January 2, 2008                                                    1349056

---

[5]    Moreover, Lexcel's statements supporting the "extra element" also go outside the pleadings and include things not even in the letters attached to EPX's complaint.  For example, Lexcel never alleges that Alec Dollarhide signed a confidentiality agreement with Lexcel.  (Compare D.I. 22 at 11 n.3 to D.I. 1 at Exhibits A-B).  Additionally, while the letters attached to the complaint refer to "EPX," it is not clear when those references are to "Electronic Payment Exchange, Inc.," a company no longer in existence, as opposed to "Phoenix Payment Systems, Inc. d/b/a Electronic Payment Exchange," a company not incorporated until 2004.  (D.I. 1 ¶ 13 and Exhibits A-B).  Furthermore, Lexcel mischaracterizes the United States District Judge Murguia's summary judgment ruling.  Judge Murguia held that the "Nelcela" software was substantially similar to the "Lexcel" software.  Merchant Transaction Sys., Inc. v. Nelcela, Inc., No. CV 02-1954-PHX-MHM, Docket No. 383, slip op. at 28 (D. Ariz. Sept. 30, 2006) (attached as Exhibit A).  Judge Murguia has made no ruling regarding what software EPX is using or whether Nelcela licensed software to EPX.

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2008 I electronically filed the foregoing with

the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

> C. Barr Flinn
> Chad S.C. Stover
> YOUNG CONAWAY STARGATT & TAYLOR, LLP

I further certify that I caused to be served copies of the foregoing document on

January 2, 2008 upon the following in the manner indicated:

## BY ELECTRONIC MAIL

Lawrence G. Scarborough
George C. Chen
Jason K. Reed
BRYAN CAVE LLP
Two North Central Avenue, Suite 2200
Phoenix, AZ  85004-7367

C. Barr Flinn
Chad S.C. Stover
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

*/s/ Julia Heaney (#3052)*

Julia Heaney (#3052)
jheaney@mnat.com

# EXHIBIT A

1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Merchant Transaction Systems, Inc.,        )    No. CV 02-1954-PHX-MHM
                                                 )
10                    Plaintiff,                 )    **ORDER**
                                                 )
11   vs.                                         )    **(Filed Under Seal)**
                                                 )
12                                               )
     Nelcela, Inc., and Arizona Corporation;)
13   Len Campagna, an Arizona resident; Alec )
     Dollarhide, an Arizona resident; Ebocom,)
14   Inc., a Delaware corporation; Post )
     Integrations, Inc., an Illinois corporation )
15                                               )
                      Defendants.                )
16   _____ )
                                                 )
17   And Related Counterclaims and Cross-)
     Claims.                                     )
18   _____

19            Currently before the Court is Nelcela, Inc., Len Campagna and Alec Dollarhide's

20   (collectively "Nelcela" or the "Nelcela Parties") Motion to Dismiss First Amended Complaint

21   of Lexcel Solutions, Inc., and Lexcel, Inc. (Dkt.#295); Nelcela's Motion for Partial Summary

22   Judgment Against Plaintiff MTSI on all Phase I Claims (Dkt.#323); Nelcela's Motion for

23   Partial Summary Judgment Against Lexcel Solutions on all Phase I Claims (Dkt.#324);

24   Nelcela's Motion for Partial Summary Judgment Against the Post Parties on all Phase I

25   Claims (Dkt.#325); and Lexcel's, Post's, and MTSI's Motion for Summary Judgement Re

26   Ownership of Software. (Dkt.#333).   After reviewing the pleadings and holding oral

27   argument on September 11, 2006, the Court issues the following Order.

28   **I.      Procedural History**

1

**A.     Claims Between the Parties**

2

Plaintiff Merchant Transaction Systems, Inc. ("MTSI") filed its complaint in this

3

Court on October 3, 2002, asserting a civil action relating to copyright infringement.  MTSI

4

alleges that Defendant Alex Dollarhide ("Mr. Dollarhide") breached his fiduciary duty and

5

duty of confidentiality when he, along with Defendant Leonard Campagna ("Mr. Campagna")

6

and their corporation Nelcela, Inc. (collectively "Nelcela" or the "Nelcela Parties") sold

7

MTSI's software to Defendants Ebocom, Inc., and Post Integrations, Inc. (collectively

8

"Post").  In addition, MTSI asserts a declaratory judgment and quiet title claim regarding its

9

ownership rights in its software ("MTSI software"), which was allegedly converted by

10

Nelcela.  The Nelcela Parties answered MTSI's claims as well as counterclaimed against

11

MTSI asserting various claims including claims for declaratory relief regarding its ownership

12

rights in its software (the "Nelcela software") and copyright infringement.  Nelcela has also

13

asserted cross-claims and third-party claims against Ebocom, Inc., Post Integrations, Inc.,

14

Mary Gerdts, and   Douglas McKinney (the "Post Parties").   These claims include a

15

declaratory claim regarding Nelcela's ownership rights in Nelcela's software as well as a

16

claim of copyright infringement.  In response, the Post Parties have cross-claimed and

17

asserted third-party claims against Nelcela including a claim that Nelcela breached their

18

contractual obligation to the Post Parties pursuant to an August 2, 2000 agreement in which

19

Nelcela was to provide its Nelcela System source code to Post.  Post has also asserted a

20

declaratory claim regarding its ownership rights in the Nelcela software.

21

Lastly, on July 29, 2005, after being granted permission to intervene, Plaintiff Lexcel

22

Solutions, Inc. ("Lexcel Solutions") filed its Intervening Complaint.  Lexcel Solutions

23

alleged that Nelcela engaged in copyright infringement of its software resulting from

24

Defendant Dollarhide's unlawful conversion of Lexcel Solutions' software.  On October 19,

25

2005, without leave of the Court, Lexcel Solutions filed its First Amended Complaint

26

asserting the same claims as asserted in its original complaint; however the First Amended

27

Complaint added Lexcel, Inc. ("Lexcel, Inc." collectively the "Lexcel Parties" or "Lexcel").

28

**B.    Bifurcation: Phase I: Ownership**

On March 11, 2005 the Parties to this litigation, excluding the Lexcel Parties, filed a stipulation with the Court styled as "Stipulation for Bifurcation of Trial Issues And Re: Trial by Jury." (Dkt.#87).  The stipulation provides that the "issue of ownership shall be bifurcated and tried expeditiously.  In the Ownership phase, discovery shall be limited to Ownership." (Id.).  On March 31, 2005, the Court held a status hearing to address the scope of Phase I of this litigation.  Nelcela's counsel recommended that the Court first determine the software dispute between MTSI and Nelcela.  (Dkt.#126,p.34,ll.24-25).  Nelcela's counsel asserted that if it were determined that Nelcela owned the software at issue that Post's defense to Nelcela's copyright infringement claim would also "go by the wayside." (Id. p.35. ll. 8-11).  In response to narrowing the issue to ownership between MTSI and Nelcela, Post's counsel objected and asserted that it should also be permitted to participate in the ownership phase of this litigation as Nelcela is obligated to prove its ownership of the software regarding its claim of copyright infringement against Post.  (Id. p. 37, ll.20-25).

Upon review of the pending summary judgment motions it appears that the Parties, especially Nelcela, have asserted argument that address issues outside the scope of the ownership phase of this litigation.  The Court has never strayed from the Parties' stipulation regarding bifurcation.  In fact, the Court has made clear that these proceedings are bifurcated with its July 28, 2005 order.  (Dkt.#209, p.2) (stating that "[f]rom November 2004 to June 17, 2005, through various hearings, the Court granted the parties stipulation to bifurcate ownership, specifying bifurcation of ownership entailed all ownership issues, including those relating to cross and third-party infringement claims.").  Thus, the Court will not entertain the merits of certain arguments that fall outside the scope of the ownership phase such as issues that require discovery during the second phase of this litigation.

**II.    Standards of Review**

**A.    Motion to Dismiss**

"The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."  <u>Gilligan v. Jamco Development Corp.</u>, 108 F.3d 246, 249 (9th Cir. 1997).

Accordingly, the court will not dismiss a complaint unless it appears beyond a doubt that the plaintiff can prove no set of facts to support the claim that would entitle the plaintiff to relief. Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999).   In determining whether a complaint states a claim, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Wyler Summit Partnership v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir.1998).   As such, an inquiry into the adequacy of the evidence is improper when deciding whether to dismiss for failure to state a claim. Enesco Corp. v. Price/Costco Inc., 146 F.3d 1083, 1085 (9th Cir. 1998).    However, "the court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001).

### B.      Motion for Summary Judgment

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only be a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986).  The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e).   See Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586-87 106 S.Ct. 1348 (1986).  The evidence must be viewed in the light most favorable to the nonmoving party.  Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

### III.     Nelcela's Motion to Dismiss the Lexcel Parties' First Amended Complaint.

Nelcela moves to dismiss the First Amended Complaint filed by the Lexcel Parties because: (1) Lexcel, Inc., is not a proper party to this litigation; and (2) the claims asserted are time barred.

### A.      Amendment Adding Lexcel, Inc., as Intervening Plaintiff

- 4 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The first basis for dismissal by Nelcela is that Lexcel Solutions improperly amended its intervening complaint to add Lexcel, Inc., to this litigation without first seeking leave of the Court. The Court granted Lexcel Solutions' Motion to intervene (Dkt.#209), and Lexcel Solutions filed its Intervening Complaint on July 29, 2005. (Dkt.#212). On October 19, 2005, before Nelcela answered Lexcel Solutions' complaint, Lexcel Solutions filed its First Amended Complaint adding Lexcel, Inc., as a Plaintiff in intervention and identifying the two as separate and distinct entities. (Dkt.# 277). Nelcela objects to the adding of Lexcel Inc., without leave of the Court.

As a preliminary matter, it is well established that when no responsive pleading has been filed, the plaintiff is entitled to amend as a matter of right without leave of the court. See Rule 15(a), Fed.R.Civ.P.; see also, Jackson v. American Bar Ass'n, 538 F.2d 829 (9th Cir.1976) (motion for summary judgment not a responsive pleading); Nolen v. Fitzharris, 450 F.2d 958, 958-59 (9th Cir.1971) (motion to dismiss not a responsive pleading). Thus, under general considerations, Lexcel Solutions clearly was permitted to amend its complaint because no responsive pleading had been filed by Nelcela. Despite the absence of any response pleading, Nelcela argues that leave of the Court was required given the procedural history of the case and the fact that the Amended Complaint added or joined Lexcel, Inc., to this litigation as an Intervening Plaintiff. However, Nelcela's argument ignores the fact that leave of the Court to amend is not required where there is no responsive pleading on file. While the Court has denied motions to extend the deadline to amend (Dkt.#162), the Court has not interfered with any Parties' right to amend pursuant to Rule 15(a) Fed.R.Civ.P.

Nelcela also objects to Lexcel's reliance on Rule 17(a) of the Federal Rules of Civil Procedure in support of joining Lexcel, Inc., as a real party in interest. Rule 17(a) provides in pertinent part:

> [n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

"The provision that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed... is added simply in the interests of justice." See 1966 Amendment to Rule 17. "Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed..." Id. (citing Levinson v. Deupree, 345 U.S. 648 (1953); Link Aviation, Inc., v. Downs, 325 F.2d 613 (D.D.C. 1963)). As such, where the failure to assert an action in the name of the real party in interest is made, courts are to be lenient in permitting the action to proceed by allowing the real party in interest to join into the litigation. This appears to be the exact situation here. Lexcel, Inc, appears to be the real party in interest as it states that it owns the copyrights that are at issue. (Amended Complaint "Compl." ¶ 10). The Lexcel Parties relate in their Response brief that the omission of Lexcel, Inc., in the original intervening complaint is attributable to its mistaken belief that the two parties were not distinct. However, upon learning that Lexcel, Inc., is separate and distinct and because it is the actual copyright holder, Lexcel Solutions amended its complaint to add Lexcel, Inc., as the real party in interest.

Nelcela also argues that Rule 21 does not support Lexcel Solutions' actions of simply amending its complaint to add Lexcel, Inc. Rule 21 states that " [p]arties may be dropped or added by order of the court on motion of any party or its own initiative." Thus, again, Nelcela argues that Lexcel, Inc., was required to move the Court for permission to add Lexcel, Inc., as the real party in interest. However, as mentioned above, this Court finds Rule 15(a) to be controlling. Additionally, the Court finds that Rule 21 did not require Lexcel Solutions to seek leave of the Court to amend its complaint to add Lexcel, Inc., as the real party in interest. See Whitaker v. Garcetti, 291 F. Supp.2d 1132, 1156 (C.D. Cal. 2003) (holding that belated addition of plaintiffs by amended complaint against defendant was proper where addition of plaintiffs was just and did not cause prejudice to defendants and in alternative addition of plaintiffs was proper because no answer had been filed). See United States ex rel Precision Co. v. Koch Indus. Inc., 31 F.3d 1015, 1018 (10th Cir. 1984) (holding that district court erred by finding that plaintiff's could not amend complaint to add plaintiff

1  without leave of the court where no responsive pleading had been filed.).   Thus, because
2  Lexcel Solutions amended its complaint to join Lexcel, Inc., as the real party in interest to
3  this litigation, prior to any responsive pleading, the Court finds that the First Amended
4  Complaint is valid on this basis.

5  **B.     Timeliness of Lexcel's Claims**

6  Nelcela also argues that even if the Court permits the First Amended Complaint to
7  stand, that dismissal of the claims asserted by Lexcel is appropriate because the claims are
8  barred by the applicable statute of limitations.  Nelcela argues that because the Amended
9  Complaint indicates that Lexcel knew of the alleged infringements well prior to bringing suit
10  in this Court that the Lexcel's copyright infringement claim is time barred.  See 17 U.S.C. §
11  507(b) (providing for 3-year statute of limitations for copyright infringement claim).   In
12  addition, Nelcela argues that the Lexcel's other claims of misappropriation, unfair
13  competition, breach of contract and conversion claims are also barred by the applicable
14  statute of limitations. See A.R.S. § 44-406 (providing for three-year statute of limitations for
15  misappropriation); A.R.S. § 12-541 (providing for one year limitation period for actions with
16  specific limitation period); A.R.S. § 12-541(3) (providing for one year limitation period for
17  written employment contract.) A.R.S. 12-542( providing for two-year limitations period for
18  conversion claim).

19  To support its argument, Nelcela relies on certain allegations in Lexcel's Amended
20  Complaint.  Nelcela cites that the Lexcel Parties allege that they discovered Nelcela's alleged
21  infringement in May of 1999. (Compl.¶ 34-35).  Additionally, the Lexcel Parties allege that
22  Nelcela breached a confidentiality agreement that was entered into on November 3, 1994.
23  (Compl. ¶'s 24, 64).   According to Nelcela, the Lexcel Parties knew of any alleged
24  infringement, breach of contract and other causes of action well before asserting such claims
25  in this Court.  Nelcela argues that because Lexcel fails to set forth any specific dated
26  allegations other than the May 1999 date and offer no allegations of "new," "ongoing,"
27  "repeated," "multiple," or "continual" conduct on the part of the Nelcela, that Lexcel's claims
28  fail.

1    However, in reviewing the First Amended Complaint, and applying the motion to

2   dismiss standard, the Court finds that it complies with the basic pleading obligations of Rule

3   8(a) Fed.R.Civ.P. and suggests that the claims are timely.    Taking the Lexcel Parties'

4   allegations as true, as the Court is required to do, it appears that the copyright infringement

5   claim, based upon the doctrine of estoppel, is timely as the First Amended Complaint alleges

6   that in May of 1999 Defendant Campagna promised that Nelcela would not use any of

7   Lexcel's programs. (Compl. ¶35). See Roer v. Buckeye Irr., Co., 809 P.2d 970, 972

8   (Ariz.App. 1990) (stating that "[a] defendant will be estopped from asserting the defense of

9   statute of limitations if by its conduct the defendant induces the plaintiff to forego litigation

10  by leading plaintiff to believe a settlement or adjustment of the claim will be effected without

11  the necessity of bringing suit."). Based upon this alleged promise, it is reasonable that the

12  Lexcel Parties relied on his promise until they subsequently discovered continued acts of

13  infringement within the three year limitations period.

14    In addition, Lexcel alleges in their Amended Complaint that "Campagna, Dollarhide

15  and Nelcela distributed copies of Lexcel's copyrighted and trade secret computer programs

16  and/or copies of the derivative works of Lexcel's computer programs to various third parties

17  and will continue to distribute Lexcel's computer programs unless enjoined from doing so."

18  (Compl. ¶ 37) (Emphasis added).    Lexcel further alleges that "Defendant Alec Dollarhide

19  continually breaches the confidentiality agreement with Plaintiff each time he uses,

20  misappropriates, distributes, licenses or sells Plaintiff's copyrighted computer programs, in

21  whole or in part, or in derivative works." (Compl. ¶64) (Emphasis added).  As such, Lexcel

22  asserts continuing acts of alleged infringement against Nelcela, not just an incident or

23  incidents occurring outside the limitations period. Lastly, even if Nelcela could show that

24  some of the alleged infringing acts occurred outside the limitations period and could not be

25  saved, because the infringing conduct is alleged to have occurred on a continuing basis, any

26  and all acts occurring within the limitations period is still actionable. See Hotaling v. Church

27  of Jesus Christ of Latter-Day Saints, 118 F.3d 199, 202 (4th Cir. 1997) (citing Roley v. New

28

World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994). As such, the Lexcel Parties' copyright infringement claim is not barred by the statute of limitations.

Similarly, Lexcel's allegation regarding Defendant Campagna's promise not to use any of Lexcel's computer programs (Compl.¶35) and other allegations of continuing actionable conduct also support the viability of Lexcel's other claims of misappropriation, unfair competition, breach of contract and conversion. (Compl. ¶37,45,64,70). In taking these allegations as true, they suggest that Nelcela has engaged in continuous actionable conduct rather than conduct outside the limitations period. These allegations of continuous actionable conduct also specifically rebut Nelcela's argument that the Lexcel's breach of contract claim is time barred. Nelcela argues the Lexcel Parties breach of contract claim is governed by a one-year limitation period of A.R.S. § 12-541(3), which the Lexcel Parties dispute. However, regardless of the applicable time period it is clear that the breach of contract claim is timely based upon the allegation Defendant Dollarhide has breached the confidentiality agreement on a continuous basis, presumably within the limitations period, whether that be governed by one or six years. (Compl. ¶64).

Lastly, Nelcela argues that Lexcel's conversion claim also fails as the Amended Complaint "admits having given the software to Mr. Dollarhide personally." (Motion to Dismiss, p. 9, ll.18-19). However, this argument ignores the crux of the claim addressing what Mr. Dollarhide did with the software and Lexcel's alleged purpose in giving him the software. The Amended Complaint alleges that the purpose of giving Mr. Dollarhide the software was "for the purpose of delivering the disks to CCS Ltd." (Compl. ¶ 33). However, allegedly Mr. Dollarhide did not execute the stated purpose and in fact allegedly used the software for his own benefit. (Compl. ¶36). Such allegations implicate a claim for conversion. See Focal Point, Inc., v. U-Haul Co. of Ariz. 155 Ariz. 318, 319, 746 P.2d 488, 489 (Ariz.App. 1986) (noting that conversion is defined as "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.").

1   Thus, based upon the motion to dismiss standard which requires that the Court accept
2   Lexcel's allegations as true, the Court finds that the claims asserted in the First Amended
3   Complaint are not untimely  and are actionable.

4   **IV.    The Parties' Motions for Summary Judgment Re: Ownership**

5          **A.    Evidentiary Objections**

6                 **(1)    <u>April 28, 1995 Agreement Between CCSL and Mr. Dollarhide.</u>**

7          The Joint Parties object to Nelcela's reliance on a document purporting to demonstrate
8   that on April 28, 1995 Alec Dollarhide and Credit Card Services, Ltd. ("CCSL") entered into
9   an agreement stating that Mr. Dollarhide owned any and all systems he wrote while
10  employed by CCSL (Joint Parties Response Statement of Facts "RSOF" ¶8).  The Joint
11  Parties question the authenticity of this document as it is not the original and their expert, Mr.
12  William Flynn, states that the document has been altered. (Id.).  The Joint Parties rely on
13  Rule 1002 of the Federal Rules of Evidence which relates that "[t]o prove the content of a
14  writing, ... the original writing, ... is required, except as otherwise provided in these rules or
15  by Act of Congress."

16         It appears undisputed that the document upon which Nelcela relies is a copy of the
17  purported original agreement between Mr. Dollarhide and CCSL.  Additionally, Nelcela
18  offers no rebuttal to the question addressing the document's authenticity.  Because Nelcela
19  relies on this writing to prove its content, but cannot prove that is the original, the Joint
20  Parties' objection will be sustained. The Court will not consider the April 28, 1995 "System
21  Ownership and License" agreement referenced in ¶7 of Nelcela's Omnibus Statement of
22  Facts.

23                 **(2)    <u>Robert Zeidman's Report</u>**

24         Nelcela objects and move to strike the addendum submitted by the Post Parties' expert,
25  Robert Zeidman.  At Mr. Zeidman's deposition on October 10, 2005, Mr. Zeidman was
26  examined by Nelcela's counsel regarding his findings as to the similarities between the
27  Lexcel software and Nelcela software.  The following testimony was given:

28

Q:    So based on your years of experience, you being the expert here, so there was no plagiarism or copying based on your Codematch and SuperDiff tests?

A:    Just a minute, I want to take a look at my notes here. What I can say is that at this time for the code that I compared, that there was, I found almost no correlation between those files. However, I think it's important to remember that this specifically, I'm not certain specifically which versions of code I was comparing or these notes are not specific as to which versions of code, whereas my expert report and all of the Codematch results that you have are and can specifically show the correlations.

Q:    Maybe I am not reading this right, Bob, but I'm reading it saying you did a Codematch, isn't that what your notes say, that you did a Codematch of Lexcel and Nelcela in the C and the C plus and almost no correlation between sets of files, that's what you write to yourself, correct?

A:    That is what I wrote to myself.
      ...

Q:    And then you did another Codematch with the SQL comparison between Lexcel and Nelcela, correct?

A:    Yes.

Q:    And a couple of, I want to make sure I'm reading your results correctly, a couple of file pairs had some very similar code but otherwise there was no significant correlation' that's what you wrote?

A:    Yes, that is what I wrote.

(Nelcela's Objections and Controverting Statement of Facts "OCSOF", ¶26).

    Nelcela relies upon this testimony in support of their position that the Lexcel software and Nelcela software are distinct. However, on November 15, 2005, Mr. Zeidman submitted deposition corrections to his testimony pursuant to Rule 30(e)[1] Fed.R.Civ.P. None of the deposition changes address the testimony given above. However, in addition to Mr. Zeidman's deposition changes, Mr. Zeidman submitted his Addendum ("Zeidman Addendum") stating that "[a]fter my deposition and my review of the expert report, I realized that I had inadvertently relied on the wrong set of data ... This addendum examines the appropriate set of data, though my opinions and conclusions on the matter remain essentially the same as in my previous expert report." (Id.). (Joint Parties' Reply SOF, Part

---

[1] Rule 30(e) provides in pertinent part: "...the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them."

I, ¶ 22,26).  Mr. Zeidman's Addendum concludes that upon comparison "there [is] a large number of files where significant portions of the code were completely identical or nearly identical.  In particular, there [are] source code files from Nelcela that [have] the same or nearly the same names as source code files from Lexcel." (Id.).

Nelcela contends that the Zeidman Addendum should be struck as it is inconsistent with his deposition testimony and is untimely because it was disclosed for the first time in the Joint Parties' exhibits to the instant motion for summary judgment. See Hambelton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1225 (9th Cir. 2005) (finding that district court was within its discretion in striking plaintiff's corrections to deposition testimony where plaintiff failed to provide explanation of basis for corrections and corrections were submitted only after motion for summary judgment was filed suggesting corrections were made to manufacture an issue of material fact).

The Court will not strike the Zeidman Addendum for several reasons.  First, contrary to the Nelcela Parties' position, the Zeidman Addendum is not inconsistent with his deposition testimony.  During his deposition Mr. Zeidman testified that based upon his notes he could not determine any files in common. (Nelcela's OCSOF ¶26).  He also testified that his notes were not complete as they did not indicate which versions of code he was comparing. (Id.).  Conversely, the Zeidman Addendum, which is consistent with his expert report, purports to rely on different materials in determining the two software versions are similar.  (Joint Parties SOF ¶ 26).  Unlike the situation in Hambleton, Mr. Zeidman is not offering the Addendum to contradict his deposition testimony, but to supplement his explanation. Id. at 1125-26. Second, the Zeidman Addendum is dated November 7, 2005 and the Joint Parties provide as an exhibit the email, with the Addendum as an attachment, from the Post Parties' counsel to Nelcela's counsel dated November 13, 2005. (Joint Parties' Reply SOF, Part I, ¶'s 22,26).  Thus, the Court reviews Mr. Zeidman's testimony, expert report and Addendum as part of the overall record and overrules Nelcela's objection.

**(3)     Robert DeCicco's Deposition Corrections**

1
2
3

The Joint Parties object to the deposition correction of the Nelcela's expert, Mr. DeCicco. At his deposition Mr. DeCicco testified in pertinent part regarding the similarity of the Nelcela software and the MTSI software:

4

Q:    Your - your report, you state right in it that the code, the Nelcela code was derived from MTSI, right?

5

A:    I said, "it's expected."

6

Q:    And your analysis confirmed that, didn't it?

7

A:    It would - it would support that expectation or support that theory.

8
9

Q:    And when your read Mr. Lerche's report, where he opines, in his professional opinion, that Nelcela copied the MTSI code, you don't disagree with that conclusion, do you sir?

10

A:    I do not disagree with that conclusion, no.

11

(Joint Parties SOF ¶23).

12
13
14
15
16
17
18
19
20
21
22

However, on November 16, 2005, within the 30-day period of Rule 30(e), Fed.R.Civ.P., Mr. DeCicco submitted his corrections to his testimony. Mr. DeCicco changed his answer to the question regarding his opinion as to whether Nelcela copied MTSI's software to read as "Yes, I disagree" [with that conclusion]. The Joint Parties object to this deposition correction as it is more than simply a correction but is a compete contradiction under the guise of Rule 30(e). See Hambleton 397 F.3d at 1225-26 (9th Cir. 2005) (stating that Rule 30(e) is to be used only for corrective, not contradictory, changes.). However, unlike the deposition corrections submitted in Hambleton, it is not out of the realm of possibility that Mr. DeCicco did not understand the question. While, Rule 30(e) is to be used only for corrective, and not contradictory changes this Court, in the exercise of its discretion, permits the deposition correction and consider it with the overall evidence.

23
24
25
26
27

The Joint Parties also object to Mr. DeCicco's deposition correction with respect to his findings regarding the similarity between the Nelcela software and Post software. At his deposition, Mr. DeCicco was asked to identify the portions of the Nelcela software that were copied by Post. (Joint Parties' SOF ¶ 30). Based upon the materials that were presented to him he was not able to identify any copying by Post of Nelcela's software. (Id. ¶ 30, Exhibit

28

13, pp. 54-55, ll. 13-19).  Subsequent to his deposition, Mr. DeCicco submitted his Rule

30(e) deposition corrections to his deposition.  Most notably, he stated in pertinent part:

> Since the time of deposition we have gone through subsequent pages from the copyright paperwork and there are matching lines of code between Post code and what Nelcela submitted for copyright.  For example, see pages USCO 00053 - USCO 00072 from Exhibit 307...

(Joint Parties' Reply SOF ¶ 30).

In addition, he submitted a supplement ("DeCicco Supplement") providing

explanation of his findings that there is evidence that Post copied Nelcela's copyrighted code.

(Id., Exhibit G).  Mr. DeCicco concluded that based upon the 22 samples of code presented,

15 were found to contain code that also appears verbatim in Exhibit 307 (portions of

Nelcela's copyrighted code). (Id.).  The Joint Parties object to both Mr. DeCicco's deposition

correction and Supplement as an  improper and untimely disclosure.  See Hambleton, 397

F.3d at 1225-26.

However, the Court will review Mr. DeCicco's deposition corrections as part of the

overall evidence.   The deposition of Mr. DeCicco by Post's counsel indicates that he was

questioned regarding a document that he had not previously reviewed. (Nelcela OCSOF ¶

29-30).  Mr. DeCicco's corrections and Supplement are not contradictory but rather act to

clarify his testimony.  Thus, the Joint Parties' objections are overruled.

**B.     Factual Background Re: Ownership**

In 1994, CCSL hired Lexcel, Inc., to create custom credit card processing computer

software.  CCSL and Lexcel, Inc., agreed that Lexcel "shall at all times own said system."

(Joint Parties'SOF ¶ 1).   Alec Dollarhide is a computer programmer with a background in

computer software and was employed by CCSL.  (Nelcela Omnibus Statement of Facts

"OSOF"¶ 2).  CCSL hired Mr. Dollarhide to assist Lexcel, Inc., in the creation of the Lexcel

software to be used by CCSL and Mr. Dollarhide performed work out of Lexcel's offices.

(Joint Parties SOF¶2).  During this time, upon entering into a confidentiality agreement with

Lexcel, Inc., Mr. Dollarhide was given access to Lexcel, Inc.'s  computers and software.

(Joint Parties SOF¶3).  In 1995, CCSL filed a lawsuit against Lexcel, Inc., however, the suit

settled quickly with a settlement agreement which established Lexcel, Inc., to be the true

owner of the software developed for CCSL. (Joint Parties SOF ¶ 4). Lexcel, Inc., and CCSL agreed in the settlement agreement that CCSL was permitted to modify the Lexcel Software, but that Lexcel would own "all changes or modifications" to the Lexcel software. (Joint Parties SOF ¶5). As part of the settlement, CCSL was to receive several floppy disks from Lexcel, which possessed source code from the Lexcel software, which is referred to in this litigation as the "Lexcel 94/95 software." (Joint Parties SOF ¶ 6). The floppy disks were given to Defendant Dollarhide to be conveyed to CCSL; however, the floppy disks were found to be located in one of Nelcela's offices when requested during this litigation. (Joint Parties SOF ¶ 6). In 1996 CCSL was sold to Credit Card Services, Inc., ("CCSI") and Mr. Dollarhide took up employment with that company. (Joint Parties SOF ¶ 7). On June 14, 1999, MTSI received the software in possession of CCSI through a conveyance agreement and Mr. Dollarhide took up employment with MTSI (Joint Parties SOF ¶ 8).

Sometime in 1997, while Mr. Dollarhide was still employed by CCSI, Mr. Dollarhide and Len Campagna formed Nelcela, Inc., for the purpose of writing software. (Nelcela OSOF ¶ 23). Nelcela also employed Mr. Dollarhide's two brothers, Jac Dollarhide and Anthony Dollarhide. (Nelcela OSOF ¶ 24). On March 31, 1999, Lexcel, Inc., inquired with CCSI as to whether it had modified the Lexcel software licenses. (Joint Parties SOF ¶ 9). On May 12, 1999, CCSI responded to Lexcel Inc., stating that it had not used or modified Lexcel's software. Mr. Dollarhide was aware of Lexcel's inquiry and the response. (Joint Parties SOF ¶ 10). From April of 1998 through February of 2000, Nelcela applied for and obtained copyright protection with respect to certain computer software generated in Nelcela, Inc.'s name. (Nelcela OSOF ¶ 25). The "Nelcela Terminal Driver" was copyrighted on April 30, 1998 and the Nelcela Merchant System was copyrighted on May 18, 1999. (Id.). In December of 2001, Lexcel registered a copyright of its own software, which is referred to as "Lexcel 2001 software." (Joint Parties SOF ¶ 18).

In September 2000, Post hired Nelcela to create back-end credit card computer software. (Joint Parties SOF ¶ 13). The agreement called for Post to provide payment of $750,000 to Nelcela in exchange for back-end credit card processing system. (Joint Parties

SOF ¶ 14).  Post made partial payment of approximately $562,000; however never made payment of the full purchase price.  (Id).  Post alleges that the Nelcela software version was not functional, thus it turned to MTSI for its software, but according to Post, the software received from MTSI was also unusable.  (Joint Parties SOF ¶ 16).  In June 2001, Post alleges that it began using its own rudimentary version of the software its programmers created.  (Joint Parties' SOF ¶ 17).  The Nelcela Parties; on the other hand, contend that Post's software is actually derived from the source code from Nelcela's software.  (Nelcela OSOF ¶ 58).

### C.    Analysis

#### (1)    Claims That Are Outside the Scope of the Issue of Ownership

As discussed above, the Court recognizes the stipulation to bifurcate these proceedings which presently addresses the issue of ownership.  (Dkt.#87).  Given the bifurcation of these proceedings the Court will reserve any judgment on the merits of issues that are not ripe for consideration.

For instance, the Court will not and cannot make a determination as to the merits of Nelcela's statute of limitations argument presented upon its motion for summary judgment against Lexcel.  Nelcela has asserted argument for dismissal of Lexcel's claims based upon the discovery that has been conducted to date.  Specifically, Nelcela argues that the last possible dates that any of Lexcel's claims could have accrued are May of 1999, when Lexcel met with Defendants Campagna and Dollarhide;  June 4, 2001, the date Lexcel met and conferred with representatives of MTSI regarding MTSI's use of Lexcel's software (Nelcela OSOF ¶ 68) or sometime in July or August of 2001, when Nelcela closed its doors.  (Id. at ¶¶ 70-71).   Based upon these dates, Nelcela argues that any and all of Lexcel's claims are time barred as Lexcel did not move to intervene until June 13, 2005 (Dkt.#169).

However, based upon the limited amount of discovery produced on this issue thus far there are still questions surrounding the date of accrual of Lexcel's claims.  For instance, according to the declaration of Mr. Kubitz, during the May 1999 meeting between Lexcel and Defendants Campagna and Dollarhide, after it was determined that there was in fact

copying of the Lexcel software, Defendants Campagna and Dollarhide promised that they would cease the unauthorized use of the Lexcel software. (Joint Parties RSOF ¶ 65). In addition, in June of 2001 when Lexcel met with MTSI, according to the testimony of Carl Kubitz, it appears that although Mr. Kubitz was aware that MTSI was using the Lexcel software, he believed that MTSI had the right to possess Lexcel's source code as a successor of CCSL pursuant to the terms of the settlement agreement between Lexcel and CCSL in 1995. (Joint Parties RSOF ¶ 68). Further, contrary to Nelcela's position, the exact date Nelcela closed its doors and received final payment is not undisputed. (Id. at ¶70). While, Nelcela asserts that Lexcel was aware of any viable cause of action, at the latest, in 2001, given the current posture of this case created by bifurcation, it would be premature for this Court to make a determination of the exact accrual date of Lexcel's claims. As such, the Court will reserve its ruling on this issue for the second phase of this litigation where this issue may be more fully developed.

While the statute of limitations issue is not fully developed there are several issues presented to the Court that do not appear to require any further discovery and can be addressed at this time by the Court.

(a)     **The Impact of the Joint Parties' Settlement**

Nelcela argues that this Court need not make a determination of the ownership claim by the Joint Parties because the Joint Parties have already agreed that they do not possess any claims against Nelcela. Nelcela argues that the settlement agreement between the Joint Parties actually resulted in the release of any and all claims by the Joint Parties against the Nelcela Parties. Nelcela relies on certain language of the Settlement Agreement that supports this conclusion. For instance, Nelcela cites § 5.1 of the Settlement Agreement which relates in pertinent part:

> The MTSI Parties, POST Parties, and Lexcel Parties hereby release, acquit, and forever discharge each other from all Claims which they may have against each other, including Claims related to any of the circumstances alleged in the Lawsuit.

In the Settlement Agreement, MTSI is defined as

> Merchant Transaction Systems, Inc., Credit Card Services, Limited, Credit Card Services, Inc.,; their corporate affiliates; their predecessors, successors and assigns; and their present and former officers, directors, shareholders, employees, attorneys, agents, and all of their other representatives.

(Nelcela SOF ¶ 83-86).

Based upon the above, Nelcela argues that as former employees or representatives of MTSI they have been released from any and all liability. See Galbraith v. Johnston, 92 Ariz. 77, 80, 373 P.2d 587, 589 (1962) (holding that "party cannot complain of the harshness of the [contract] terms nor expect a court to relieve him of the consequences.").

However, Nelcela ignores other specific language within the Settlement Agreement that evidences the Joint Parties intent to pursue claims against Nelcela. For instance, the beginning of the Settlement Agreement relates in pertinent part:

> WHEREAS the Lexcel Parties created certain computer software in 1994 and 1995;
>
> WHEREAS the Parties have come to learn that such software was surreptitiously copied by the Nelcela Defendants
> ...
>
> WHEREAS the Parties have come to learn that they have each been victims of fraud and/or other misconduct perpetrated by the Nelcela Defendants.

(Joint Parties RSOF ¶ 98).

Additionally, the Settlement Agreement provides for a specific division of any proceeds received in the event of settlement or money judgment against Nelcela in this suit. (Joint Parties RSOF ¶ 99). Finally, the Joint Parties executed an addendum to the Settlement Agreement further stating their intent not to release any claims against Nelcela in this litigation. (Joint Parties RSOF ¶ 100). The Joint Parties argue that these provisions and the addendum evidence their intent to pursue claims against Nelcela rather than release them from liability.

The Court finds that the release language of the settlement agreement between the Joint Parties does not end the litigation by the Joint Parties against Nelcela. The agreement as a whole demonstrates the Joint Parties' intent to pursue litigation against Nelcela. Taylor v. State Farm Mut. Auto Ins. Co., 175 Ariz. 148, 154 854 P.2d 1134, 1140 (Ariz. 1993) (stating that it is fundamental that court attempt to construe parties intent at time of the

1  contract.).  This is further supported by the addendum executed by the Joint Parties.  Id.

2  (stating court may admit extrinsic evidence to construe intent where it is consistent with

3  proponent's interpretation.).  Thus, the settlement agreement and outside evidence indicate

4  that the Joint Parties did not release their claims against Nelcela.

5      The Court also finds that Arizona Court of Appeals ruling in Spain v. General Motors

6  Corp., 171 Ariz. 226, 226, 829 P.2d 1272 (Ariz.App 1992) instructive.  In Spain, the Arizona

7  Court of Appeals reversed the lower court's determination that a release agreement between

8  a plaintiff accident victim and tortfeasor and insurance company acted as a complete release

9  agreement for the car manufacturer and seller of automobile.  Rather, the release between

10 these parties was between only the contracting parties and contained boilerplate language that

11 did not include the car manufacturer or seller's name.  Id.  The same is true here.  The

12 settlement agreement possesses language indicating the Joint Parties intent on pursuing

13 claims against Nelcela with arguably some boilerplate language covering Nelcela as

14 recipients of the Settlement Agreement.  Under Arizona law, such a release does not act to

15 release such unnamed parties from liability.

16              **(b)    Impact of Settlement Agreement Between Lexcel, Inc., and
                       Credit Card Services, Ltd.**

17     Nelcela also argues that Defendant Dollarhide is released from any and all claims

18 asserted by Lexcel, Inc.  Nelcela relies on a the settlement agreement between Lexcel, Inc.,

19 and CCSL executed on July 1, 1995.    (Joint Parties RSOF ¶ 13).  Most notably, the

20 settlement agreement provides in pertinent part:

21          3. Mutual Releases.  Upon execution of this Settlement Agreement, the parties
            shall hereby forever release, discharge, and acquit the others, their agents,
22          servants, employees, successors and assigns, of and form all claims, demands
            and causes of action which may arise or may have arisen out of or be related
23          in any way to the Licensor's development of and license to Licensee of the
            CCS System, the License/Use Agreement, and Licensee's and Anderson
24          Advisors, Inc.'s civil claims against Licensor, Carl Kubitz and Pete Kubitz as
            set forth Clark County, Nevada Case No. A347322.
25 (Id).

26     The settlement agreement between Lexcel, Inc., and CCSL further states that the

27 purpose of the settlement agreement is that "[t]he parties desire to settle their differences

28

respecting the License/Use Agreement..." (Id.). However, while the above language of the settlement agreement between Lexcel, Inc. and CCSL clearly relates to the License/Use Agreement between these parties regarding Lexcel's software, Defendant Dollarhide would have this Court apply this settlement as a complete release of Lexcel Inc.'s claims asserted against him in this litigation on the basis that he was an employee of CCSL at the time of the settlement. Defendant Dollarhide's construction of this settlement agreement appears too broad. This agreement provides a limited release provision for the parties to the agreement based upon the license and use of the Lexcel software in 1995. The agreement does not appear to provide an absolute release for any future actionable conduct by the employees of CCSL that may relate to this software. In the instant case, Lexcel, Inc., alleges that Nelcela, including Defendant Dollarhide have violated Lexcel's legal rights including violating Lexcel's copyright. There is no language in the settlement agreement between Lexcel, Inc., and CCSL that suggests that such conduct is protected under the settlement agreement.

### (c) Scope of Release Within "Agreement of Purchase and Sale of Stock" Between MTSI and EPX

Defendant Dollarhide further contends that the purchase agreement between MTSI and Electronic Purchase Exchange ("EPX") provides a release that forecloses any and all liability against him by MTSI. On March 29, 2001, MTSI entered into a purchase and stock agreement with EPX which possessed relevant release language providing in pertinent part:

> Seller [Clothier] and MTSI on behalf of himself/itself and each of his/its Related Persons, hereby releases and forever discharges the Buyer, the Company and each of the other Acquired Companies, and each of their respective individual, joint or mutual, past, present and future Representatives, affiliates, stockholders, controlling persons, Subsidiaries, successors and assigns (individually, a "Release" and collectively "Releasees") from any and all claims, demands, Proceedings, causes of action, Orders, obligations, contracts, agreements, debts and liabilities whatsoever, whether known or unknown, suspected or unsuspected, both at law and in equity...

(Nelcela Parties SOF ¶ 32).

Nelcela argues that at the time of this agreement it was well known that Defendant Dollarhide was a past employee of MTSI and thus falls within the scope of this release. In addition, Nelcela also attempts to invoke the protection of this release language based upon the fact that Mr. Dollarhide also eventually became a shareholder of MTSI. However, while

- 20 -

quoting the general language of the release; Nelcela fails to cite more specific language of discussing the limited scope of the agreement. For instance paragraph 20(d) of the agreement states in pertinent part:

> Nothing in this agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this agreement on any persons other than the parties to it and their respective successors and assigns. Nothing in this agreement is intended to relive or discharge the obligation or liability of any third persons to any party to this agreement.

(Joint Parties RSOF ¶ 33).

Thus, Nelcela omits the provision of this agreement which limits the scope to only the parties to the agreement, Mr. Clothier, CCSI and EPX. In addition, Mr. Clothier unambiguously relates in his affidavit that there was no intent to release third parties such as Nelcela for matters unrelated to the transaction. (Joint Parties RSOF ¶ 33). It does not appear the intent of this release provision was to be so broad to include Mr. Dollarhide or the Nelcela Parties. Because such releases are construed according to the parties' intent, the Court does not find that the agreement bars MTSI's claims against the Nelcela Parties. See Spain, 171 Ariz. at 26 (stating that scope of release is construed according to parties' intent).

### (d)    Standing of MTSI to Assert Lawsuit After Sale to EPX

Nelcela also argues that MTSI does not have standing to assert any clams because MTSI sold all of its assets and liabilities to EPX with the March 29, 2001 sale to EPX which is evidenced by the "Agreement of Purchase and Sale of Stock." (Nelcela Omnibus SOF ¶ 32). Further, Nelcela argues that even if MTSI ever owned the relevant software in this litigation, there is no evidence that MTSI executed a "hold back" to assert any rights related to the software. (Nelcela OSOF ¶ 37-40).

The Court does not find persuasive Nelcela's argument that there is no evidence that MTSI ever owned the relevant software in this litigation. MTSI has produced documents indicating that in June of 1999, MTSI purchased the "back end" software that is at issue in this litigation from CCSI. (Joint Parties RSOF ¶ 37). The "Record of Corporate Action" indicates that on June 1, 1999, MTSI purchased this software for $450,000. (Id.). The purchase of this software is further reflected on MTSI's balance sheet. (Id.). Second, MTSI

- 21 -

1  did not sell all of its assets, which would include the software, and liabilities to EPX with the

2  March 29, 2001 "Agreement of Purchase and Sale of Stock" to EPX.  (Nelcela OSOF ¶ 32).

3  The scope of that transaction was limited in that it consisted of the sale of stock to EPX as

4  well as assigned to EPX any loans, debts or accounts that Mr. Clothier and CCSI were owed

5  by CCSL or MTSI.   (Joint Parties RSOF ¶ 32). In addition, Mr. Clothier and CCSI sold

6  certain assets to EPX, which are identified in Schedule I of this agreement; however, none

7  of the items include the software that is at issue in this litigation.  (Id.).   Thus, because this

8  sale appears to be limited in scope only to that of stock and other unrelated assets, the Court

9  finds  that MTSI has standing to pursue claims against Nelcela.

10            **(e)**      **MTSI's Standing to Assert Claims Based Upon Ownership in Light of Joint Parties' Settlement**

11        The Nelcela Parties argue that the Joint Parties January 20, 2006 settlement agreement

12  bars MTSI's claims that are based upon ownership.  As discussed below, the Joint Parties

13  position with respect to ownership of the software at issue between the Lexcel Parties, MTSI

14  and Nelcela's software are derived from the Lexcel, Inc.'s, software.  This position is reflected

15

16  in the Joint Parties settlement agreement.  The settlement agreement states in pertinent part:

17

18        3.1 Ownership of the Lexcel Software.  The Parties agree that the Lexcel Entities are the sole and exclusive owners of the Lexcel Software, all parts of the Lexcel Software, and any works derived from the Lexcel Software.

19  (Nelcela OSOF ¶ 87).

20        Further, the Lexcel Software is defined as:

21        "Lexcel Software" means the credit card processing source code and other computer software developed by the Lexcel Parties beginning in 1994,

22        including the source code to that software, any related or ancillary software, and any works derived in whole or in part from that software including but not

23        limited to MTSI's software and the Nelcela Software.

(Id).

24        Based upon MTSI's position that Lexcel, Inc., is the true owner of the software, the

25  Nelcela Parties request that the Court grant summary judgment in Nelcela's favor on all of

26  MTSI's ownership claims, such as MTSI's claim for declaratory relief and quite title.  The

27  Court; however, finds  that the unique position that MTSI has asserted with respect to

28

ownership of the software does not bar its ownership claims.  First, MTSI is permitted to argue alternative theories in support of its position.  See Rule 8(a) Fed.R.Civ.P.  Second, in the event that this Court cannot determine that Lexcel, Inc., or Nelcela is the owner of the software at issue between these parties, MTSI's alternative theory that it owns the relevant software based upon the possible derivative relationship between the MTSI and Nelcela software may be asserted.  As such, MTSI has not lost its standing to assert its ownership claims.

        **(f)    Impact of this Court's December 16, 2005 Order on the Post Parties' Claims of Declaratory Judgment, Failure to Deliver (Breach of Contract) and Unjust Enrichment**

Nelcela notes that on December 16, 2005, this Court dismissed with prejudice the Post Parties' claim of conversion.  Specifically, the Post Parties alleged that they paid Nelcela $200,000 on September 20, 2000 as part of the two phase agreement which consisted of: (1) Nelcela providing Post the Nelcela system and (2) Nelcela providing Post the customized Nelcela system for a total price of $750,000   (Post Crossclaim ¶30).  From October to December 2000, Post allegedly paid Nelcela an additional $362,000. (Id. ¶41).  However, the Court dismissed the conversion claim because there was no indication from Post's pleadings that they had satisfied the full $750,000 purchase price.  As such, the Court held that Post did not have a right to demand the source code at the time of the alleged conversion  (Dkt.#310, p.10).  Nelcela argues this ruling bars the Post Parties' claims of declaratory judgment, failure to deliver and unjust enrichment.

As discussed in the Court's December 16, 2005 order and upon review of the record it is undisputed between the parties that Post did not pay the full purchase price for the Nelcela software when it stopped payment based upon Nelcela's alleged failure to provide functional software.  (Joint Parties RSOF ¶46-48).  According to Post, the agreement consisted of a licensing fee of $750,000 to use the Nelcela software to be paid in four installments and an additional customization fee to be paid on an hourly basis.  (Id.).  However, at the time that Post stopped making payments, Post had paid only $200,000 of the licensing fee to use the Nelcela software and contributed over $300,000 in customization

1   payments. (Id.). These undisputed facts demonstrate that Post's declaratory claim that it be

2   declared the owner of the Nelcela software must fail.[2] Because Post only contributed partial

3   payment for use of the Nelcela software, Post cannot now, as a matter of law, be deemed to

4   be the owner of the Nelcela software.    However, Post's breach of contract and unjust

5   enrichment claim are still valid even though full payment was not made for the Nelcela

6   software.   These claims derive out of   the Post Parties' allegations that they paid

7   approximately $562,000 to the Nelcela Parties for non-functional software, which in turn

8   required the Post Parties to use other means to find functional software. The fact that the full

9   purchase price was not paid by the Post Parties does not preclude their recovery on these

10  claims.

11                  **(2)    Ownership of Software**

12                      **(a)    Lexcel Software v. Nelcela Software**

13          The Joint Parties and Nelcela move this Court for summary judgement on the issue

14  of ownership.  It is the Joint Parties position that the software at issue in this case is owned

15  by Lexcel, Inc., and that the MTSI and Nelcela's software is derived from the Lexcel, Inc.

16  software. See 17 U.S.C. § 201(stating that owner of copyright has exclusive rights to do and

17  authorize the preparation of derivative works based upon copyrighted work). Conversely,

18  Nelcela argues that the evidence demonstrates that it is the owner of the relevant software.

19                      **(b)    The Joint Parties' Theory of Ownership**

20          The Joint Parties have taken a unified position against Nelcela regarding the

21  ownership dispute between Lexcel, MTSI and Nelcela. The Joint Parties theory is based upon

22  the substantial similarity between the Lexcel 2001 software, the MTSI software and the

23  Nelcela software and the premise that both MTSI and Nelcela's software constitute derivative

24  ─────────────────────

25       [2] On September 7, 2006, Post filed a Rule 56(f) declaration requesting that issues
    falling outside the ownership issue be deferred until Phase II of this litigation. (Dkt.#376).
26  The declaration does not identify any further discovery that would be needed on Post's
    declaratory claim over the Nelcela software. Moreover, it is undisputed that the full purchase
27  price has never been paid by Post.  (Joint Parties' RSOF ¶¶ 46-48).  As such, summary
28  judgment against Post on this particular claim is appropriate.

                                    - 24 -

1  works of Lexcel, Inc's software. 17 U.S.C. § 201.  In short, the Joint Parties theory of
2  ownership is based upon the following two bases: (1) there is substantial similarity between
3  the Lexcel 2001 software, the MTSI software and Nelcela software evidencing copying; and
4  (2) the Lexcel 2001 software is substantially similar, is derivative of and/or is an update of
5  the Lexcel 94/95 software produced to Mr. Dollarhide as part of the settlement between
6  Lexcel, Inc., and CCSL.   Based upon these arguments, it is the Joint Parties position that the
7  Court can conclude only that Lexcel, Inc, is the owner of the software because it is
8  undisputed that Lexcel, Inc.'s software predates the other versions. (Joint Parties Reply SOF
9  Part II, ¶13).  Conversely, Nelcela argues that the evidence demonstrates that it is the owner
   of the software.

10              **(c)      Relationship Between Lexcel's 94/95 Software and 2001**
11                         **Software.**

12         There is debate between the parties as to whether Lexcel's 2001 software is
13  substantially similar, is derivative of or is an update of Lexcel's 94/95 software.  The Joint
14  parties note that Mr. Zeidman reviewed both Lexcel's 94/95 software as well as the 2001
15  software when making a comparison to the Nelcela software. (Joint Parties SOF ¶ 16). Mr.
16  Zeidman ultimately concluded that when comparing the Lexcel source code with that of the
17  Nelcela source code, that "the source code from one program was plagiarized from the source
18  code of the other program."  (Id).

19         Moreover, the Joint Parties note that both Lexcel's 94/95 software version and 2001
20  version are identical with respect to the "Interchange.H" configuration.  (Joint Parties Reply
21  SOF ¶ 4).    Specifically, the   "Interchange.H" configuration appears verbatim in both
22  versions.  Thus, while, Dr. Posner only compared the 2001 software and its "Interchange.H"
23  configuration in making his determination as to the existence of copying between the Lexcel
24  software and Nelcela software, the Joint Parties argue that the "Interchange.H" common to
25  both versions of Lexcel's software evidences a strong relationship between the two, thus
26  making a comparison between the Lexcel 2001 software and other Parties' software
   probative.

27

28

1    Conversely; however, Nelcela presents evidence from their experts in support of the

2    opposite conclusion. Nelcela cites the opinion of Jeff Pell who when comparing the two

3    Lexcel software versions stated in pertinent part:

4         The recently supplied Lexcel code appears to be much more of a fully featured
          merchant processing system than the set of code originally from Lexcel. It
5         contains a more compete (sic) of reporting capabilities, pin pad injection,
          encryption support, online interfaces, and balancing / control pad capabilities.
6         And it contains some evidence of having had maintenance performed on it to
          accommodate VISA regulatory required changes. The earlier Lexcel code did
7         not have these same functions.

     (Nelcela OCSOF ¶6).

8         In addition, Nelcela cites the expert report prepared by Mr. DeCicco and Kevin

9    Faulkner addressing the similarity between Lexcel's 94/95 and 2001 software. Mr. DeCicco

10   concluded in pertinent part:

11        The Lexcel floppy disks produced in this matter contain "C" source code that
          appears to be significantly older than the source code on the Lexcel CD.
12        Therefore, because the code on the floppy disks is older and closer to the
          timeframe of the alleged theft, it would be the best code from which to perform
13        comparison with code from other companies. It is puzzling why the people
          performing the code comparison in the Lexcel Expert Report chose the Lexcel
14        CD instead of the floppy disks.

     (Id).
15
16        Mr. DeCicco also concluded that "[t]here is a large difference between the three

17   floppy disks and the one CD-Rom disc that Lexcel produced in this case. (Id).

18        Thus, in reviewing the record there is conflicting evidence and a factual dispute as to

19   the relationship between Lexcel's 94/95 and 2001 software versions. At the summary

20   judgment stage this Court cannot make a determination as to whether Lexcel's 94/95 software

21   and 2001 software are sufficiently similar to make a comparison of the 2001 Lexcel software

22   with the other Parties' software determinative. However, although the Court is not able to

23   squarely address this issue, the Court is able to address other relevant issues narrowing the

     overall issue of ownership.

24        **(d)    Copying Between Lexcel 2001 Software, MTSI Software
                   and Nelcela Software**
25

26        Although the Court cannot make a determination as to the relationship between

27   Lexcel's 94/95 and 2001 software versions, the Court is able to make a determination as to

28   the relationship between the Lexcel 2001 software, MTSI software and Nelcela software.

1   There is significant evidence demonstrating the existence of a substantial overlap of features
2   and characteristics between these three software versions.

3       For instance, there appears to be little dispute that the Lexcel 2001 software and MTSI
4   software are substantially related.  For instance, Nelcela's expert, Mr. DeCicco, did not
5   contest Lexcel's expert, Dr. Posner's, findings regarding significant overlap of features
6   between the Lexcel code and MTSI code.  (Joint Parties' SOF ¶ 19, 20). Based upon the
7   relationship between the MTSI software and the Lexcel software, the Joint Parties argue that
8   the overlap between the MTSI software and Nelcela software evidences that Nelcela copied
    Lexcel's software.

9       As with the relationship between the Lexcel 2001 software and MTSI software, there
10  appears to be an equally strong overlap or commonality of features between MTSI software
11  and Nelcela software.  For instance, Nelcela, while contesting Mr. Zeidman's ultimate
12  conclusion that Nelcela copied MTSI's software, does not contest his findings that are "a very
13  large number of matching instruction sequences, identical instructions, identical comments
14  and identical identifiers" between the MTSI and Nelcela softwares. (Joint Parties' SOF ¶ 22).
15  Further, Mr. DeCicco's deposition testimony evidences that at the very least that there is
16  substantial similarity between the MTSI and Nelcela softwares. (Joint Parties' SOF ¶ 23).

17      In addition, there is significant evidence of direct similarity between Lexcel's 2001
18  software and the Nelcela software.  For example, Dr. Posner testified that based upon a
19  comparison of the 2001 Lexcel software and the Nelcela software there is a large amount of
20  copying.  (Joint Parties'  SOF ¶ 25).  He concluded and testified  there to be a significant
21  overlap between the  Lexcel 2001 software and the Nelcela software that was beyond the
22  scope of coincidence or "random chance."  (Joint Parties' SOF ¶ 25).   Notably, part of Dr.
23  Posner's findings were based upon the "Interchange H" configuration common to both the
24  Lexcel and Nelcela software.  (Joint Parties' Reply SOF, Part II, ¶ 4).  This configuration
25  presents verbatim in both Lexcel's software and Nelcela's software.  (Id).  As noted by Dr.
26  Posner, such similarities do not suggest they derive from "random chance." (Joint Parties
    SOF ¶ 25).     Importantly, Mr. DeCicco concurred with Dr. Posner's findings.   Mr. DeCicco

27
28

- 27 -

testified that he agreed that the software versions share a significant amount of similarities. (Joint Parties SOF ¶ 28). At his deposition the following exchange took place:

> Q:     Dr. Posner states "The Lexcel CD and the Nelcela copyright system shares significant amount of source code." Do you agree with that opinion?
>
> A.     I do not disagree with that.
>
> Q:     He goes on to say, "This is sharing" - - I'm reading from Dr. Posner's report, second sentence - - "This sharing is not simply at the program structure level, but extends to the exact naming, formatting and commenting of the source." Do you have any basis for disagreeing with that opinion?
>
> A.     That they have the exact naming, formatting and commenting?
>
> Q:     The sentence I read you.
>
> A:     Yeah.  No, I do not disagree with that.

(Joint Parties SOF ¶ 27-28).

Mr. DeCicco also agreed that the best explanation of the similarity and overlap between the Lexcel software and the Nelcela software is the existence of copying.  (Joint Parties SOF ¶ 29).

Based upon the undisputed similarities between the Lexcel 2001 software, MTSI software and Nelcela software the Court finds that as a matter of law that they are substantially similar beyond the possibility of random chance and that copying took place.

**(e)     Ownership Determination: Lexcel Software v. Nelcela Software**

It is clear that there is has been copying between the Lexcel, MTSI and Nelcela software; however, the question still remains as to which party owns the software.  The dispute surrounding this issue can be directly traced to the fact that neither party is able to conclusively establish which party developed the software first.  The Joint Parties argue that there can be no other reasonable conclusion other than that Lexcel, Inc., owns the software based upon the relationship between Lexcel's 94/95 software and 2001 software. However, the Court finds there presently to be an issue of fact as to this relationship.  At trial, if it is determined that the Lexcel 2001 software is substantially similar, derivative of or is an update of Lexcel's 94/95 software then it appears that a conclusion can be made; Lexcel, Inc., is the owner of the software as its software predates any other version. (Joint Parties SOF ¶6;

Nelcela OCSOF, Part II ¶ 13). Conversely; however, if it is determined that Lexcel's 94/95 software is distinct from the Lexcel 2001 software, then the determination of ownership will likely boil down to a determination of whose software was created first.

### (f)    Nelcela Software v. Post Software

Although the Court cannot determine which party owns the software between Lexcel and Nelcela, the issue is somewhat different with respect to the dispute of ownership between Nelcela and Post. As discussed above, the Court finds that Post's declaratory claim of ownership over the Nelcela software is unsupported. However, Nelcela also asserts that Post is engaging in copyright infringement by using Nelcela's software. As such, the issue arises as to whether Post is using Nelcela's software or rather is using its own version, the Post software, as it contends.

As noted above, the Court will permit Mr. DeCicco's Supplement regarding his findings regarding the similarity between Nelcela's copyrighted software and the Post software. However, this Supplement does not appear to be overly helpful to Nelcela's position. Initially, in Mr. DeCicco's expert report he opined that when comparing the Nelcela code to the Post code that even after the June 2001 cutoff date, the date Post alleges that it started using its own code, there is evidence Post continued to use Nelcela's code. (Nelcela OSOF, Exhibit 58). Mr. DeCicco concluded that even "the most recent copy of Post's code, from 06/28/2005, still contains elements or traces of the Nelcela code." (Id.). However, Mr. DeCicco's deposition testimony provides an opposite conclusion when comparing the Nelcela copyrighted code to the Post code. At Mr. DeCicco's deposition he agreed that based upon a review of Nelcela's copyrighted software and the Post software, that he could not make a determination that Post was using any part of Nelcela's copyrighted software. (Joint Parties SOF ¶ 30). Nelcela raises issue with Post's reliance on this evidence due to the fact that Mr. DeCicco stated that he could not make a completely informed decision at the time. (Nelcela OCSOF ¶ 30, Part II ¶17-19). Mr. DeCicco then issued his Supplement stating that he reviewed 22 samples of code that Post had provided and when comparing them to the Nelcela copyrighted code, 15 samples were found to contain code appearing in Nelcela's code. (Id). Of the 15 samples identified, all of them derived from the "Bnkmerch.pbl" file. (Id).

- 29 -

However, in the Joint Parties' Reply brief , Post claims that it does not own or use any part of the "Bnkmerch.pbl" file in the Post software. (Joint Parties Reply SOF ¶30).  Rather, Post discloses that the only reason the "Bnkmerch.pbl" file even appeared on the code given to Nelcela is that the "Bnkmerch.pbl" files are stored on the same computers that possess Post's source code.   (Id).   Thus, even with the assistance of additional time after his deposition, it appears that Mr. DeCicco only identified one common file between the Nelcela and Post software that Post states that it does not own or use.

However, even though Post states that it does not own or use the "Bnkmerch.pbl" file this position was not disclosed until the filing of the Joint Parties' Reply in support of summary judgment on the issue of ownership over the Post software.  As such, Nelcela has not had an opportunity to rebut Post's position that it does not use or own this file in its software.  Thus, the Court will deny summary judgment in favor of Post regarding the Post software.  However, at trial if Nelcela is not able to demonstrate any significance of the presence of the "Bnkmerch.pbl" in the Post software, it is likely that Nelcela's copyright infringement claim will fail as the Post software would likely be deemed wholly distinct from the Nelcela software.

## V.      Summary of Ownership

The Court is presently not able to make a determination which party owns the software at issue between Lexcel, Inc., MTSI or Nelcela.   While there is substantial overlap of features between the Lexcel, MTSI and Nelcela softwares, there is factual issue as to which parties' software was created first.  Additionally, the Court will deny entry of summary judgment on the issue of ownership of the Post software.  Although Nelcela does not identify any common features between the two software versions other than the "Bnkmerch.pbl" file, the Court finds that there is a factual issue as to the significance of this file in the Post software at this time.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Nelcela's Motion to Dismiss First Amended Complaint of Lexcel Solutions, Inc., and Lexcel, Inc. (Dkt.#295).

1    **IT IS FURTHER ORDERED** denying Nelcela's Motion for Partial Summary

2  Judgment against Plaintiff MTSI on All Phase I claims.  (Dkt.#323).

3    **IT IS FURTHER ORDERED** denying Nelcela's Motion for Partial Summary

4  Judgment Against Lexcel Solutions on all Phase I claims. (Dkt.#324).

5    **IT IS FURTHER ORDERED** granting in part and denying in part Nelcela's Motion

6  for Partial Summary Judgment against the Post Parties on all Phase I claims. (Dkt.#325).

7  Nelcela's motion is granted to the extent that Post's declaratory claim regarding ownership

8  over the Nelcela software is dismissed with prejudice. Nelcela's motion for summary

9  judgment is denied in all other respects.

10    **IT IS FURTHER ORDERED** denying the Joint Parties' Motion for Summary

11  Judgment Re Ownership of Software. (Dkt.#333).

12    **IT IS FURTHER ORDERED** setting this matter for a pretrial conference regarding

13  the issue of ownership on November 20, 2006 at 4:00 p.m.

14    **IT IS FURTHER ORDERED** directing the parties to meet and confer and file a

15  short joint statement no later October 10, 2006 as to whether this Order should remain sealed.

    DATED this 30th day of September, 2006.

16

17

18  _____

19  Mary H. Murgula
    United States District Judge

20

21

22

23

24

25

26

27

28

- 31 -